T. HAROLD SCHNEIDAU, JR. *v.* WILLIAM F. MANLEY ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued June 8—decided July 26, 1944.

*Ernest L. Josem,* for the appellant (plaintiff).

*William F. Tammany,* for the appellees (defendants).

BROWN, J. The plaintiff brought this action against the defendants, husband and wife, for specific performance and damages because of their failure to carry out an alleged contract to sell realty owned by them in Norwalk. The complaint alleged that the defendants owned the land, which was located in the Silvermine district of Norwalk; that the defendant William F. Manley, to whom we shall hereafter refer as Manley, was the husband and agent of the defendant Armenell F. Manley; that on March 29, 1943, he accepted by telegram the plaintiff's written offer of $8500 net for the premises; and that the defendants have refused to convey the property although the plaintiff has ever since been ready, able and willing to perform on his part. The allegations as to agency and the contract are denied by the answer. The court, concluding that no recovery could be had against the defendants because there was no agency, and that none could be had against Manley alone because there was no allegation or proof of the breach of any contract made by him for the sale of his undivided interest in the property, rendered judgment for the defendants from which the plaintiff has appealed.

The finding, which is not attacked, establishes these facts: The defendants were the owners of the realty in question and owned no other property at Silvermine in Norwalk. March 22, 1943, the plaintiff's agent signed and sent a letter to Manley in which he stated, referring to the plaintiff, that the person interested in purchasing the property at Silvermine offered $8500 net for it. On March 29, 1943, Manley in response sent a telegram to the plaintiff's agent accepting the terms outlined in this letter. The plain-

tiff did not know until after that date that Mrs. Manley owned an undivided half-interest in the property. Both defendants refused to convey the premises to the plaintiff for $8500 net. The reasonable value of the property was $10,500. A further fact found is that Mrs. Manley never gave her husband any authorization or instructions to act as her agent in selling the property or to negotiate or contract for the sale of it. The plaintiff has assigned error in the court's conclusion reiterating this and also in its conclusion that Mrs. Manley never caused or authorized her husband to hold himself out as her agent for the purposes above stated. The burden rested on the plaintiff to prove that Manley in agreeing upon the sale of the property, in so far as his wife's undivided interest therein was concerned, was acting as her agent within the scope of his authority. In the absence of subordinate facts in the finding indicating that the court's conclusion that the husband had neither actual nor apparent authority was unwarranted, it cannot be disturbed. This precludes recovery by the plaintiff against Mrs. Manley.

The next question is whether, as contended by the plaintiff, there was error in the court's further conclusion that for lack of allegation and proof of breach of any contract made by Manley for the sale of his individual undivided interest the plaintiff can have no judgment against him. The facts found show that Manley contracted to convey full title. That his ownership was restricted to an undivided one-half interest instead of including the entire title in no way limited his capacity to contract. For the breach of such a contract he could be held liable. So here, he could be liable for breach of his contract to convey these premises whether or not Mrs. Manley was owner of the other undivided half-interest. The find-

ing is adequate to establish such liability. The facts above recited are sufficient to furnish a basis for relief to the plaintiff by specific performance or damages.

The applicable general rule is that "the vendee, if he so elects, is not only entitled to have the contract specifically performed to the extent of the vendor's ability to comply therewith by requiring him to give the best title he can or convey what he has, but he may compel the vendor to convey his defective title or deficient estate, and at the same time have a just abatement out of the purchase price for the deficiency of title, quantity, or quality of the estate to compensate for the vendor's failure to perform the contract in full." 49 Am. Jur. 123; *Moore* v. *Gariglietti,* 228 Ill. 143, 147, 81 N. E. 826; *Melin* v. *Woolley,* 103 Minn. 498, 500, 115 N. W. 654; *Bartee* v. *Matthews,* 212 Ala. 667, 103 So. 874; *Andiren* v. *Heffernan,* 299 Pa. 284, 288, 149 Atl. 184; *Feldman* v. *Lisansky,* 239 N. Y. 81, 84, 145 N. E. 746; *Brookings* v. *Cooper,* 256 Mass. 121, 124, 152 N. E. 243; *Keator* v. *Brown,* 57 N. J. Eq. 600, 42 Atl. 278. The reason of this rule is that it is unjust to allow the vendor to take advantage of his own wrong, default or misdescription. 2 Story, Equity Jurisprudence (14th Ed.), § 1067. It is based upon equitable principles, and endeavors to preserve the rights of both parties. Pomeroy, Specific Performance (3d Ed.), § 434; and see note, 46 A. L. R. 748. However, the court may confine the vendee's relief to damages, where under the circumstances the granting of specific performance would be inequitable, particularly where the rights of third parties are concerned. *Solomon* v. *Shewitz,* 185 Mich. 620, 631, 152 N. W. 196; 49 Am. Jur. 125; 6 Page, Contracts (2d Ed.), § 3349. Which form of relief will be accorded rests in its sound discretion, depending upon the equities of the case and based on reason and sound judgment.

*Pauley* v. *Hadlock,* 21 Ariz. 340, 347, 188 Pac. 262, quoting from *Willard* v. *Tayloe,* 8 Wall. (75 U. S.) 557, 565, 19 L. Ed. 501; *Binns* v. *Smith,* 93 N. J. Eq. 33, 35, 115 Atl. 69.

The allegations of the complaint are sufficient to support the plaintiff's cause of action under the rule above quoted. Aside from the allegation as to agency which the court's finding has effectively eliminated from consideration, they are that the defendants owned the property, the plaintiff made an offer to Manley to buy it for $8500, Manley accepted this offer, and the defendants refused to convey. By two of his prayers for relief the plaintiff seeks a decree that the defendants specifically perform the agreement and $3000 damages. These are sufficient to warrant either a decree for specific performance or for damages against Manley alone. *Makusevich* v. *Gotta,* 107 Conn. 207, 209, 139 Atl. 780. The court erred in concluding that the lack of pleading and proof of the breach of a contract by Manley to sell his half-interest precluded recovery therefor by the plaintiff.

While the trial court did not expressly decide that the agreement was unenforceable because of the Statute of Frauds, the defendants' claims at the trial and the briefs of the parties indicate that the question was in the case, and, as it will no doubt be of material assistance upon a retrial to determine it, we have decided to do so. The only claim under the statute made in the defendants' brief is that the statement of the price to be paid, "$8500 net," is too indefinite. "The note or memorandum of sale, required by the statute, must state the contract with such certainty, that its essentials can be known from the memorandum itself, without the aid of parol proof, or by a reference contained therein to some other writing or thing certain; and these essentials must at least con-

sist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement." *Nicholas* v. *Johnson,* 10 Conn. 192, 198; *Shelinsky* v. *Foster,* 87 Conn. 90, 96, 87 Atl. 35. It suffices to satisfy the statute if the price is stated in any words or figures which clearly indicate, as applied to the subject, what that price is. *Gowen* v. *Klous,* 101 Mass. 449, 454. "Net" means "clear of all charges and deductions . . . that which remains after the deduction of all charges or outlay, as net profit." *St. John* v. *Erie Ry. Co.,* 22 Wall. (89 U. S.) 136, 148, 22 L. Ed. 743; *Alspaugh* v. *Dillon,* 83 Conn. 65, 70, 75 Atl. 82; *Gibbs* v. *People's National Bank,* 198 Ill. 307, 311, 64 N. E. 1060; *Scott* v. *Hartley,* 126 Ind. 239, 245, 25 N. E. 826; 3 Bouvier's Law Dictionary, p. 2332. The statement of the price "$8500 net" means that the defendants were entitled to receive that amount free and clear of all charges or deductions of any kind. While it is not expressly found that the premises were subject to a mortgage when the letter and the telegram were exchanged, the plaintiff's brief states that this was the fact. If that be so, that does not introduce into the situation any element of uncertainty. As the agreement is silent as to any qualifications or limitations upon the title to be conveyed, it means a title free and clear of all incumbrances. *Chambers* v. *Tulane,* 9 N. J. Eq. 146, 153; *Conroy* v. *Woodcock,* 53 Fla. 582, 584, 43 So. 693. The price agreed upon means the sum to be paid for such a title; and the obligation is upon the defendant to discharge any incumbrance there may be on the property before conveying it. *Gagner* v. *Petrauskas,* 112 Conn. 307, 311, 152 Atl. 145. The terms of the agreement as to the price are sufficiently definite to meet the requirements of the statute.

There is error, the judgment in favor of the defend-

ant William F. Manley is set aside and a new trial is ordered as to him.

In this opinion the other judges concurred.